UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
PASQUALE MAZZARIELLO,                           :
                                                :
                              Petitioner,       :
                                                :          **MEMORANDUM AND ORDER**
                                                :          **DENYING HABEAS CORPUS**
                                                :
        -against-                               :
                                                :
WILLIAM E. PHILLIPS, Superintendent,            :          04 Civ. 2224 (AKH)
Green Haven Correctional Facility,              :
                                                :
                              Respondent.       :
-----------------------------------------------------x

ALVIN K. HELLERSTEIN, UNITED STATES DISTRICT JUDGE:

On July 28, 1999, the Supreme Court of the State of New York, Bronx County

(Fisch, J.) rendered judgment, after a jury trial, convicting Pasquale Mazzariello (hereafter

"Petitioner") of Robbery in the First Degree (Penal Law § 160.15[3]) and sentencing him, as a

persistent violent felony offender, to an indeterminate term of 25 years to life imprisonment.

The Appellate Division affirmed the conviction, People v. Mazzariello, 298 A.D.2d 223 (1st

Dept. 2002), and the New York State Court of Appeals denied Petitioner leave to appeal.  People

v. Mazzariello, 99 N.Y.2d 561 (2002).  Petitioner now asks this court to issue a writ of habeas

corpus pursuant to 28 U.S.C. §2254(d)(1), (2).  For the following reasons, the petition is denied.

BACKGROUND

On January 18, 1998, Winston Banks, a cab driver, picked up a fare on Castle Hill

and Starling Avenues in the Bronx.  As he approached the corner, at about 11:00 p.m., Mr.

Banks saw Petitioner and another man standing at a distance of three to five feet.  Though the

lighting was not very bright, it was bright enough for Mr. Banks to observe the features on the

men's faces. Mr. Banks recognized Petitioner as having been a passenger in his cab six months earlier. That time, Petitioner wore white long johns and a white T-shirt, unusual attire for summer, and conversed extensively with Mr. Banks. Brief for Respondent, at 3-4, <u>People v. Mazzariello</u>, 298 A.D.2d 223 (1st Dept. 2002) (No. 1620/98).

When Petitioner and the other man entered the cab, Mr. Banks asked Petitioner if he was Mike, Matty's cousin. Mr. Banks testified that he called Petitioner Mike because he did not remember the name Petitioner had previously given him. Neither passenger responded to Mr. Banks' question. <u>Id</u>. At one point, the second man asked Mr. Banks to stop the cab so that he could get his girlfriend. When Mr. Banks complied, the man got out of the cab, came around to the driver's door, put a knife to Mr. Banks' neck and told him to "give it up." <u>Id</u>. Mr. Banks gave Petitioner $70, and Petitioner told Mr. Banks to get out of the cab. When Mr. Banks complied, Petitioner and the other man jumped in the cab and drove away. Mr. Banks testified that the area where the robbery occurred was well-lit and that he got a good look at Petitioner and the other man. <u>Id</u>. at 4-5.

Soon after the robbery, Mr. Banks spotted two police officers in a van and reported the robbery to them. He described the robbers as two white males, said that he recognized them, and noted that the accomplice had deep blue eyes and wore a red hood. Mr. Banks testified that the officers did not seem interested in talking to him and that they only asked him for a basic description of the robbers and for information about his car. They did not ask about the robbers' height, clothing, or facial hair, nor did they ask Mr. Banks for Petitioner's name or how he knew Petitioner. Mr. Banks did not volunteer this information. The officers drove Mr. Banks around in an unsuccessful attempt to locate the robbers. Later that night, Mr. Banks realized that he had mistakenly called Petitioner "Mike." <u>Id</u>.

Several days after the robbery, Mr. Banks told Detective Nugent about his first encounter with Petitioner, and said that Petitioner had used the name Pat on that occasion. Petitioner was apprehended at the site where Mr. Banks had picked him up the previous summer. On January 28, 1998, Mr. Banks viewed a lineup at the 43rd precinct and identified Petitioner as one of the robbers. Id. at 5-6.

At trial, Police Officer Lance Lumsden testified for the defense that he was one of the officers who Mr. Banks approached after the robbery. While he did not remember whether Mr. Banks had named his assailants, or whether he had asked for this information, Officer Lumsden testified that, had Mr. Banks mentioned a name, he would have written it down. Officer Lumsden also testified that, when he drove around with Mr. Banks, they tried to find the car. Additionally, Officer Lumsden confirmed that, in the police report, he filled in "other," meaning that the complainant has seen the perpetrator somewhere before, or knows of him, but doesn't really know him. Id. at 6-7.

Prior to testifying, Officer Lumsden requested closure of the courtroom. The court reviewed the factors to be weighed in closing a courtroom as laid out in Waller v. Georgia, 467 U.S. 39, 48, 104, S.C.t. 2210, 2216 (1984) (the Constitution requires that the party seeking to close the courtroom advance an overriding interest that is likely to be prejudiced. The closure must be no broader than is necessary, the trial court must consider reasonable alternatives to closure, and the trial court must make findings adequate to support the closure). The court then conducted a hearing in which Officer Lumsden testified that he worked as an undercover officer in the 44th precinct, that he had made about twelve narcotics buys in the area over the last year and that these cases were pending. Brief for Respondent, at 6-7. Officer Lumsden had no objection to Petitioner's family being present at the trial. Id. at 8.

Neither defense counsel nor Petitioner had objections to closure, and defense counsel did not pursue alternatives other than closure. The court added that there were no other cases scheduled for the day Officer Lumsden was to testify, so excluding a full courtroom seemed unlikely. Id. at 7. When ordering the closure, the court explained that, even though Petitioner consented to the closure, the hearing was still necessary since the public's right to an open trial is distinct from the defendant's. Id. at 7-8. The court then requested that the government make the closure motion, even though Officer Lumsden was a defense witness. The government acquiesced, Id., the trial proceeded, and Petitioner was found guilty.

In this habeas petition, Petitioner argues: 1) That the court, in closing the courtroom, deprived Petitioner of his Sixth Amendment right to a public trial; 2) that his conviction was not proven by legally sufficient evidence; and 3) that the sentence imposed is disproportionate and vindictive.

## PETITIONER'S CLOSED COURTROOM CLAIM

### I.

Petitioner is procedurally barred from arguing the closed courtroom issue in this habeas petition. Federal courts cannot review "a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. Petitioner argues that, since New York law and federal law apply the same standard to courtroom closures, that the Appellate Division's decision to deny his appeal rested on state law "interwoven" with federal law, and is thereby preserved under Brown v. Greiner, 409 F.3d 523, 532 (2nd Cir. 2005) (a state court decision based on interwoven state and federal grounds does not satisfy the "independent and adequate state grounds" that requirement and, as such, does not

preclude habeas review of the federal claim). Petitioner is correct. However, Petitioner's failure to object to the closure does constitute an adequate and independent state ground.

The Court has defined "adequate and independent state grounds" to include state procedural defaults. 2546, 2554 (1991). <u>Harris v. Reed</u>, 489 U.S. 255, 260-62, 109 S.Ct. 1038, 1042-43 (1989). Thus, when the last state court to render judgment on a case relies on a state procedural default as an adequate and independent basis for deciding a federal claim, federal courts are barred from considering the federal claim as part of a habeas petition. <u>Id</u>. By consenting to the closure, Petitioner forfeited his right under New York law to appeal the closure. <u>E.g.</u>, <u>People v. Brown</u>, 278 A.D.2d 60 (1st Dept. 2000). Thus, the primary issue is whether the Appellate Division "actually relied on the procedural bar as an independent basis for its disposition of the case." <u>Harris</u>, 489 U.S. at 261-62, 109 S.Ct. at 2043, quoting <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 327, 105 S.Ct. 2633, 2638 (1989).

While state courts can reach the merits of the federal claim in an alternative holding, <u>Id</u>. at 264, 109 S.Ct. at 1044, n. 10, the court must "clearly and expressly" state that at least one independent and adequate basis for its judgment is a state procedural bar. <u>Id</u>.; <u>Michigan v. Long</u>, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476 (1983). Thus, when a state court "says that a claim is 'not preserved for appellate review' and then rule[s] 'in any event' on the merits, such a claim is not preserved." <u>Fama v. Commissioner of Correctional Services</u>, 235 F.3d 804, 811, n.4 (2nd Cir. 2000), citing <u>Glenn v. Bartlett</u>, 98 F.3d 721, 724-25 (2nd Cir. 1996). In Petitioner's case, the Appellate Divison expressly stated that "defendant's public trial claim is… unpreserved" and then ruled on the merits "in any event." <u>Mazzariello</u>. 298 A.D.2d at 223. Hence, Petitioner's closed courtroom claim is unpreserved and he is procedurally barred from arguing it in federal court as part of a habeas petition.

Furthermore, a reversal based on plain error (an error that affects substantial rights and which may be considered even though it was not brought to the court's attention. Fed R. Crim. P. 52(b)) is inappropriate. In order to warrant a reversal, the plain error must result in a miscarriage of justice. United States v. Young, 470 U.S. 1, 15, 105 S.C.t. 1038, 1046-47 (1985). Federal courts must disregard harmless errors. Id. at 17, n.14, 105 S.Ct. at 1047, n. 14; Fed. R. Crim. P. 52(b).

In Petitioner's case, the closure, if done in error, was harmless. One of the purposes of a public trial is to produce truthful testimony. Brown v. Kuhlmann, 142 F.3d 529, 534-35 (2nd 1998). Officer Lumsden testified about his conversation and car ride with Mr. Banks. The content of Officer Lumsden's testimony could be refuted only by Mr. Banks or by the other officer in the car with them. "It is inconceivable that the closure excluded a spectator who could have contradicted the witness." Id. Similarly, public trials also serve as "safeguard[s] against any attempt to employ our courts as instruments of persecution." Id. at 536. Petitioner's family, who remained the in the courtroom during Officer Lumsden's testimony, would be at least as likely, if not more so, to protest an abuse of governmental power as would an unaffiliated spectator. Thus, the closure did not impede any of the purposes of a public trial. Additionally, the fact that the closure took place at a time when the courtroom was expected to be empty provides further evidence that the closure had no material effect on the trial.

Finally, the fact that courtroom closure is a structural error, Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 1264-65 (1991), is irrelevant since federal courts cannot review structural errors (errors which affect the entire conduct of the trial from beginning to end and which require automatic reversal regardless of whether they are harmless.

Brown, 142 F.3d at 539) that have been procedurally defaulted in state court. Hatcher v.

Hopkins, 256 F.3d 761, 764 (8th Cir. 2001); Ward v. Hinsley, 377 F.3d 719, 725 (7th Cir. 2004).

## II.

Even if Mazariello was not procedurally barred from bringing his closed

courtroom claim, his claim fails on the merits. In order for a court to grant a writ of habeas

corpus, the state trial must have "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law as determined by the Supreme Court

of the United States." 28 U.S.C. §2254(d)(1). In order for a sate court decision to be contrary to

federal law as decided by the Supreme Court, the state court must reach either a conclusion

opposite that of the Supreme Court on a question of law or an opposite conclusion to the

Supreme Court on a set of facts that are materially indistinguishable from a Supreme Court case.

Williams v. Taylor, 529 U.S. 362, 405, 529 S.Ct. 1495, 1519 (2000). A state court action is an

unreasonable application of Supreme Court precedent if it identifies the correct governing legal

principle but unreasonably applies that principle to the facts of Petitioner's case. Id. at 413.

Petitioner argues that, while the trial court correctly identified the factors to be considered when

closing a courtroom[1], it unreasonably applied them when deciding to close the courtroom during

Officer Lumsden's testimony. Brief for Petitioner, at 16. Specifically, he argues that there was

no overriding interest sufficient to permit courtroom closure and that the court made insufficient

findings to support the closure. Id. at 12.

---

[1] As discussed above, in Waller v. Georgia, 467 U.S. 39, 48 104, S.C.t. 2210, 2216 (1984), the Court mandated that, in order to close a courtroom:

1) The party seeking to close the courtroom must advance an overriding interest that is likely to be prejudiced;
2) The closure must be no broader than necessary to protect that interest;
3) The trial court must consider reasonable alternatives to closing the proceeding; and
4) The trial court must make findings adequate to support the closure.

Petitioner is correct that "an undercover officer's undercover status will not in itself support closure," <u>Brown</u>, 142 F.3d at 538, and that "the mere finding that an undercover officer will continue to operate in a particular area, and fears for his personal safety if his identity is revealed, is insufficient" to justify denying a defendant his right to a public trial. <u>Okonkwo v. Lacy</u>, 104 F.3d 21, 25 (2nd Cir. 1997).

However, the moving party's burden of proof varies with the extent of the closure requested, <u>Brown</u>, 142 F.3d at 538, quoting <u>Ayala v. Speckard</u>, 131 F.3d 62, 70 (2nd Cir. 1997), and in Petitioner's case, the closure was limited. Initially, the courtroom was closed only for Officer Lumsden's testimony in circumstances where, as discussed above, members of the public who might happen upon the courtroom would not be in a position to contradict his testimony. Second, Petitioner's family was allowed into the courtroom. This fact is especially significant since Petitioner's case was the only case the court had that day, so it is highly unlikely that anybody other than the family would have been in the courtroom during Officer Lumsden's testimony. Furthermore, the trial "was never completely closed to the public because [Petitioner] was tried before a jury composed of fifteen representatives of the community (twelve jurors and three alternates), who may have outnumbered the handful of spectators in the courtroom." <u>Id</u>. at 536. Finally, Petitioner consented to the closure, indicating that, at least in Petitioner and defense counsel's opinion, it was not important that Officer Lumsden testify publicly.

Moreover, concern for an undercover officer's safety is a legitimate interest, <u>Id</u>. at 537, which is likely to be prejudiced by an open trial. Officer Lumsden was an undercover narcotics officer. "Given the predisposition of drug dealers to violence," <u>Id</u>., his desire to conceal his identity is sufficient to justify a limited closure as occurred. And by consenting to the closure, Petitioner agreed with this assessment. Taken together, the limited extent of the closure,

Officer Lumsden's fear for his personal safety, and Petitioner's consent support a finding that the state established an overriding interest that was likely to be prejudiced, and that the trial court made findings adequate to support the closure.

## PETITIONER'S OTHER CLAIMS

Petitioner's other claims have been reviewed and are found to be without merit. They are therefore dismissed.

## CONCLUSION

For the forgoing reasons, the petition for a writ of habeas corpus is denied.

SO ORDERED.

Dated:    New York, New York
        July 14, 2005

ALVIN K. HELLERSTEIN
United States District Judge